**U.S. ARMY ENGINEER CENTER and Fort Belvoir and U.S. Department of the Army, Petitioners,**

**v.**

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**The American Federation of Government Employees, AFL–CIO, Local 1052, Intervenor/R.**

No. 84–1327.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1985.

Decided May 23, 1985.

Deborah Ruth Kant, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., William Kanter, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., on brief), for petitioners.

Robert J. Englehart, Washington, D.C. (Ruth E. Peters, Sol., Steven H. Svartz, · Deputy Sol., Washington, D.C., on brief), for respondent.

Joseph Goldberg, Washington, D.C. (Mark D. Roth, Washington, D.C., on brief), for intervenor.

Before WIDENER and WILKINSON, Circuit Judges, and MacKENZIE, Chief United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINSON, Circuit Judge.

This case concerns the procedures by which the Federal Labor Relations Authority may determine the negotiability of agency rules and regulations for purposes of collective bargaining. The issue is one of statutory construction under the Federal Labor-Management Relations Act ("FLMRA"), Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. § 7101 *et seq.* (1982). The Act provides, *inter alia,* that agency rules or regulations may be subjects for collective bargaining if the Federal Labor Relations Authority ("FLRA" or "the Authority") has determined in a negotiability proceeding that there is no "compelling need" for the rule or regulation. 5 U.S.C. § 7117(a), (b). We must decide whether a negotiability proceeding is the only permissible procedure for the resolution of compelling need or whether the Authority may alternatively make a compelling need determination in the context of an unfair labor practice (ULP) proceeding under 5 U.S.C. § 7118.

The Authority has held, pursuant to 5 C.F.R. § 2423.5 (1985), that it may make the compelling need determination in a ULP proceeding where an agency has by regulation unilaterally acted to change existing conditions of employment. We dis-

agree. The statute makes clear that the § 7117(b) negotiability appeal is the only authorized procedure for the purpose. Therefore, we reverse and remand the case to the Federal Labor Relations Authority for determination of compelling need pursuant to 5 U.S.C. § 7117(b).

## I

In April 1981 the Department of the Army issued a regulation, AR 690–400, Chapter 430, setting forth a new performance appraisal system. The Army directed its components, including petitioner Fort Belvoir, to institute the new system no later than October 1, 1981. The new regulation provided, *inter alia,* that employees with current annual ratings of "Highly Successful" would be credited with two years of additional service for reduction-in-force purposes. It also provided that rating supervisors would discuss proposed appraisals of performance with rating reviewers before discussing such appraisals with the employees themselves.

After issuance of the new regulation but prior to its institution, the American Federation of Government Employees, AFL–CIO, Local 1052 ("the union"), exclusive representative of a unit of employees at Fort Belvoir, met with management to negotiate over the impact and implementation of the new system. The union advanced two proposals in conflict with the regulation: 1) that employees with current annual ratings of "Highly Successful" not have any years added for reduction-in-force purposes; and 2) that an employee's supervisor prepare his proposed performance appraisal, give it to the employee for his signature, and discuss it with him before discussing it with the rating reviewer. After checking with the Army, Fort Belvoir responded that it could not negotiate over the procedures, and the new regulation took effect on June 1, 1981.

Thereafter, the union instituted an unfair labor practice proceeding under 5 U.S.C. § 7118. The General Counsel of the FLRA accordingly filed a complaint against both

Fort Belvoir and the Army, alleging that the Fort had violated 5 U.S.C. § 7116(a)(1) and (5) by refusing to bargain over the union's proposals and alleging that the Army had violated 5 U.S.C. § 7116(a)(1) by preventing the Fort from bargaining, thereby interfering with the collective bargaining relationship between the union and Fort Belvoir.[1] The case came before the Federal Labor Relations Authority on briefs submitted by the Army and Fort Belvoir and by the FLRA's General Counsel.

The Army's defense rested upon 5 U.S.C. § 7117, which provides that the duty to bargain does not extend to matters which are the subject of agency-wide regulation unless the FLRA has determined that there is no compelling need for the regulation. To determine compelling need, the statute authorizes a negotiability proceeding, an expedited process that, unlike a ULP proceeding, does not involve the FLRA's General Counsel. As a negotiability appeal had not taken place, the Army argued, the union could not raise the matter in an unfair labor practice proceeding.

The Authority's General Counsel argued that the FLRA could make the necessary compelling need determination in the context of an unfair labor practice proceeding, as opposed to a negotiability appeal, in this instance. Regulations promulgated by the Authority pursuant to 5 U.S.C. § 7117 ("Expedited Review of Negotiability Issues")[2] and 5 U.S.C. § 7118 ("Unfair Labor Practice Proceedings")[3] permit the union to choose between the two procedures where "the matter proposed to be bargained" involves "actual or contemplated changes in conditions of employment." Since such changes were involved here, in unilateral action taken by the agency, the General Counsel argued that a negotiability proceeding was not the exclusive remedy provided by the statute.

Relying upon its earlier holding in *Defense Logistics Agency (Cameron Station, Virginia), et al.*, 12 FLRA No. 86 (1983), the Authority ruled that it could decide the compelling need issue in an unfair labor practice proceeding where an agency had issued or revised a regulation that caused a unilateral change in conditions of employment.[4] *U.S. Army Engineer Center, et al.*, 13 FLRA No. 116 (1984). Proceeding to the merits, the Authority found that the Army failed to carry its burden of demonstrating a compelling need for the new regulation;[5] hence both proposals were negotiable. Consequently, the Authority held

1. 5 U.S.C. § 7116(a)(1) and (5) provide as follows:
   (a) For purposes of this chapter, it shall be an unfair labor practice for an agency—
   (1) to interfere with, restrain, or coerce any employee in the exercise of any right under this chapter; ...
   (5) to refuse to consult or negotiate in good faith with a labor organization as required by this chapter; ...

2. 5 C.F.R. § 2424.5 provides as follows:
   Where a labor organization files an unfair labor practice charge pursuant to Part 2423 of this subchapter which involves a negotiability issue, and the labor organization also files pursuant to this part a petition for review of the same negotiability issue, the Authority and the General Counsel ordinarily will not process the unfair labor practice charge and the petition for review simultaneously. Under such circumstances, the labor organization must select under which procedure to proceed.... Cases which solely involve an agency's allegation that the duty to bargain in good faith does not extend to the matter proposed

to be bargained *and which do not involve actual or contemplated changes in conditions of employment* may only be filed under this part. [Emphasis supplied.]

3. 5 C.F.R. § 2423.5 contains similar language, concluding as follows:
   Cases which solely involve an agency's allegation that the duty to bargain in good faith does not extend to the matter proposed to be bargained and *which do not involve actual or contemplated changes in conditions of employment* may only be filed under Part 2424 ["Expedited Review of Negotiability Issues"] of this subchapter. [Emphasis supplied.]

4. The Authority's interpretation of the statute was recently upheld in *Defense Logistics Agency v. FLRA*, 754 F.2d 1003 (D.C.Cir.1985), although the case was remanded for further evidence on the question of compelling need.

5. The Authority has issued a regulation setting forth the criteria for determining "compelling need." 5 C.F.R. § 2424.11 (1985).

the Army guilty of an unfair labor practice in violation of 5 U.S.C. § 7116(a)(1), although it dismissed charges against Fort Belvoir because its actions had been directed by the Department of the Army. In addition to issuing a cease-and-desist order against the Army, the Authority directed it both to permit Fort Belvoir to bargain on the two proposals and to post appropriate notices. The Army and Fort Belvoir brought this appeal; the FLRA cross-petitioned for enforcement of its order.

## II

■ The Federal Labor Management Relations Act states in unambiguous terms that, where an agency regulation is asserted as a bar to negotiations between a governmental employer and a union, the FLRA must determine that no compelling need for the regulation exists *before* any duty to bargain arises on the part of the employer. The sole statutory procedure for making the compelling need determination is a negotiability appeal prescribed by 5 U.S.C. § 7117(b) and the relevant regulations of the FLRA. 5 C.F.R. § 2424. 5 U.S.C. § 7117 provides, in relevant part, as follows (emphasis supplied):

(a) ... (2) The duty to bargain in good faith shall, to the extent not inconsistent with Federal law or any Government-wide rule or regulation, extend to matters which are the subject of any agency rule or regulation referred to in paragraph (3) of this subsection *only if* the Authority *has determined under subsection (b) of this section* that no compelling need (as determined under regulations prescribed by the Authority) exists for the rule or regulation.

(3) Paragraph (2) of the subsection applies to any rule or regulation issued by any agency or issued by any primary national subdivision of such agency... [6]

(b) (1) In *any case* of collective bargaining in which an exclusive representative alleges that no compelling need exists for any rule or regulation referred to in subsection (a)(3) of this section which is then in effect and which governs any matter at issue in such collective bargaining, the Authority *shall determine under paragraph (2) of this subsection,* in accordance with regulations prescribed by the Authority, whether such a compelling need exists.

(2) For the purpose of this section, a compelling need shall be determined not to exist for any rule or regulation only if—

(A) the agency, or primary national subdivision, as the case may be, which issued the rule or regulation informs the Authority in writing that a compelling need for the rule or regulation does not exist; or

(B) the Authority determines that a compelling need for a rule or regulation does not exist.

(3) A hearing may be held, in the discretion of the Authority, before a determination is made under this subsection. If a hearing is held, it shall be expedited to the extent practicable and shall not include the General Counsel as a party.

(4) The agency, or primary national subdivision, as the case may be, which issued the rule or regulation shall be a necessary party to any hearing under this subsection.

While the statute requires expedition of any discretionary hearing, the regulations state the Authority shall expedite all proceedings under the section and shall issue a written decision "at the earliest possible date." 5 C.F.R. § 2424.10.

"As in all cases involving statutory construction, 'our starting point must be the language used by Congress.'" *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68,

---

**6.** There is an exception to this paragraph for a union which represents a majority of all employees of the issuing agency and which has therefore been accorded "national consultation rights." Any bargaining representative with national consultation rights must be informed of any substantive change in conditions of employment proposed by an agency, be given an opportunity to present its views thereon, and receive a written statement of the agency's reasons for its final action. 5 U.S.C. §§ 7117(a)(3), 7113(b). That exception does not apply here.

102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982), *quoting Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). Our duty is to "give effect to the intent of Congress," *United States v. American Trucking Ass'n*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940), which we must first seek in the "plain language" of the statute, giving the words their "ordinary meaning." *American Tobacco Co.*, 456 U.S. at 68, 102 S.Ct. at 1537 (citation omitted.)

The words emphasized in the statute are those of condition precedent. They state plainly and in absolute terms that the employer has a duty to bargain over an agency-wide regulation[7] *"only if"* the FLRA *"has determined under subsection (b) of this section"* that no compelling need for the regulation exists. No exceptions exist for regulations that "involve actual or contemplated changes in conditions of employment," 5 C.F.R. § 2424.5. No provision states that the compelling need determination may occur under 5 U.S.C. § 7118, governing unfair labor practice proceedings, simply because the Authority or one of the parties finds that procedure more convenient.[8] The Authority argues that while the union could have pursued a § 7117(b) negotiability appeal, it was not required to; nor does the statutory wording preclude the Authority from permitting the union a choice of procedures, as specified by 5 C.F.R. § 2424.5. This contention ignores the use of the word "only" in the statute. "Only" is a highly singular word. It does not suggest alternatives or choice. Moreover, 5 U.S.C. § 7117(a)(2) is clear that any

duty to bargain on the employer's part arises only after the FLRA *"has determined"* that no compelling need for the disputed regulation exists. It is illogical, in light of this language, to maintain that a union could charge an agency with "having engaged in or engaging in an unfair labor practice," 5 U.S.C. § 7118(a), because the employer has refused to bargain over subject matter as to which no duty to bargain *has been determined* to exist.

We also reject appellee's interpretation of the phrase "then in effect" in 5 U.S.C. § 7117(b)(1). Appellees argue that this language limits the exclusive application of § 7117(b) to situations where a union challenges the need for *pre-existing* regulations during collective bargaining but does not include circumstances where a union challenges an agency's unilateral *change* in a regulation affecting conditions of employment. The Court of Appeals for the District of Columbia Circuit found this reading of the statute "reasonable" and therefore upheld the FLRA's decision in *Defense Logistics Agency v. FLRA*, 754 F.2d 1003 (D.C.Cir.1985). With respect, we differ. We believe the phrase "then in effect," as used in the statute, clearly refers to regulations in effect at the time of the collective bargaining process, whether they be new, old, or modified.

Any other interpretation would hamstring an agency's ability to institute new regulations even when it perceives a compelling need for the change, or allow the expedited negotiability appeal procedure to

---

7. The Department of the Army is, of course, a "primary national subdivision" of the Department of Defense. *See* 5 U.S.C. § 7117(a)(3). For convenience, the short-hand term "agency-wide regulation" is used throughout this opinion.

8. In *American Federation of Government Employees, Local 2736 v. FLRA*, 715 F.2d 627 (D.C. Cir.1983), the issue was whether the legal question of negotiability should be combined with the factual issues in an unfair labor practice proceeding. There, as here, the Authority ruled that the entire dispute could be resolved in the ULP. Stating that "the statutory command, as supplemented by the legislative history, is un-

mistakable," *Id.* at 629, the court held the union entitled to an expedited review of the legal question in a separate negotiability appeal. The court there was dealing with a negotiability issue under 5 U.S.C. § 7117(c) (all negotiability issues other than those posing the question of compelling need). The Authority, however, has prescribed the same procedures for both, § 7117(b) and (c), *see* 5 C.F.R. § 2424.1, except for 5 C.F.R. § 2424.11, which sets forth the criteria for determining compelling need under subsection (b). 5 C.F.R. § 2424.1 begins, "The Authority will consider a negotiability issue under the conditions prescribed by 5 U.S.C. § 7117(b) and (c)."

be bypassed whenever a new regulation is instituted or an old one is modified. The result of this reasoning is that 5 U.S.C. § 7117(b) could soon be regulated out of existence. To follow that path is to abandon our mandate to give equal effect to all provisions of the statute. *S. Dantoni, Inc. v. Great Atlantic & Pacific Tea Co.,* 496 F.2d 1378, 1383 (5th Cir.1974); Sutherland, Statutory Construction § 46.06 (4th ed. 1984). *See Administrator, Federal Aviation Administration v. Robertson,* 422 U.S. 255, 261, 95 S.Ct. 2140, 2145, 45 L.Ed.2d 164 (1975); *United States v. Snider,* 502 F.2d 645, 652 (4th Cir.1974). Section 7117(b) enables a government agency to act in furtherance of its essential mission without facing the charge and possible sanctions of an unfair labor practice. It is implausible to suppose that Congress intended a sweeping exception to the operation of this section through the brief and buried phrase, "then in effect."

▮ In reaching our conclusion, we recognize the special deference owed an agency's interpretation of its own enabling statute. *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983). We recognize our duty to uphold that interpretation if it is "reasonable and defensible," *American Federation of Government Employees, Local 2096 v. FLRA,* 738 F.2d 633, 637 (4th Cir.1984), *citing Bureau of Alcohol, Tobacco and Firearms,* even if it is not the construction we would reach in a *de novo* setting. *Chevron v. Natural Resources Defense Council,* —— U.S. ——, 104 S.Ct. 2778, 2781–2783, 81 L.Ed.2d 694 (1984); *Defense Logistics Agency v. FLRA,* 754 F.2d 1003, 1013–1014. Under 5 U.S.C. § 7123(c), our review is limited to whether the agency's construction is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1982). Nonetheless, the Supreme Court has cautioned that courts must not "rubber stamp ... administrative decisions that they deem inconsistent with a statutory

mandate or that frustrate the congressional policy underlying a statute." *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, ——, 104 S.Ct. 439, 444, 78 L.Ed.2d 195, *quoting NLRB v. Brown,* 380 U.S. 278, 291–292, 85 S.Ct. 980, 988–989, 13 L.Ed.2d 839 (1965). To interpret this statute as the FLRA would have us do would be to undercut a mechanism wrought by Congress for determining the negotiability of rules and regulations throughout the federal government.

### III

An examination of the legislative history of the FLMRA supports the view that compelling need must be determined in a § 7117(b) negotiability appeal. First, it is noteworthy that Congress paid careful attention to § 7117. The first reported bill in the House made only government-wide regulations a potential bar to negotiations, and even these could be subjected to the test of compelling need. Matters covered by agency-wide regulations were always negotiable. H.R.Rep. No. 1403, 95th Cong., 2d Sess. (1978), *reprinted in* Subcommittee on Postal Personnel and Modernization of the House Comm. on Post Office and Civil Service, 96th Cong., 1st Sess., Legislative History of the Federal Service Labor-Management Relations Statute, Title VII of the Civil Service Reform Act of 1978, at 697 (Comm.Print 1979) ("Legislative History"). In response to the Senate's differing version, the House accepted a substitute bill proffered by Congressman Udall which changed the provision to its present form. Legislative History at 927. That substitute brought negotiability disputes under the separate expedited process of § 7117(c); the earlier House bill had provided for their resolution in an unfair labor practice proceeding. *Id.* at 927. This indicates that Congress was quite conscious of the differences in the two proceedings.[9]

Thus, Congress made in § 7117 a considered decision favoring the negotiability appeals procedure over the ULP process

---

9. In earlier versions, compelling need determinations were already to be made in negotiability appeals, as now provided by § 7117(b). Legislative History at 927.

when the question of negotiability was in doubt. This decision in turn reflected Congress' determination to obtain "more effective and efficient Federal Government that is a predictable result of a meaningful labor-management program for Federal agencies," Legislative History at 931, by balancing the duty to bargain in good faith with the need to maintain essential governmental rights and flexibility—a balance achieved primarily through the provisions regarding reserved management rights and scope of duty to negotiate, §§ 7106 and 7117. *See, e.g.,* Legislative History at 843–845; 927–934. Given the obvious importance that Congress attached to these provisions, we cannot turn our backs on the procedure set out in 5 U.S.C. § 7117 and create for the parties the procedural choice that Congress foreclosed.

Appellees' contention that current procedures should be guided by past practice under Executive Order No. 11491 (Oct. 29, 1969), *reprinted in* Legislative History at 1244–1257, which the FLMRA supplanted, is unpersuasive. Appellees are correct that under that Order, as it existed at the time the FLMRA was passed, the procedure they recommend today was followed. However, appellees overlook the fact that the procedure was specifically authorized by two 1975 amendments to the Order, which were themselves revoked in 1978.

Until 1975, no proposal was negotiable if it was "contrary to law, regulation, controlling agreement, or this Order," Executive Order No. 11491, Section 11(c), *reprinted in Legislative History* at 1251. If a labor organization wished to raise a negotiability issue under this criterion, it could do so by appeal to the Federal Labor Relations Council (the predecessor of the FLRA). *Id.,* Section 11(c)(4). In 1975, a comprehensive review of labor-management relations in the federal sector resulted in a number of recommendations and consequent changes. *See* Labor-Management Relations in the Federal Service January 1975: Report and Recommendations of the Federal Labor Relations Council on the Amendment of Executive Order 11,491, as Amended, *reprinted in* Legislative History at 1283–1335. Among the changes was the introduction of the compelling need standard for judging the negotiability of agency regulations affecting conditions of employment. *Id.* at 1305–1306. In addition, the Council's Report recommended that where an agency unilaterally changed established personnel policy or practice, or any matter affecting working conditions, a labor organization should be permitted to challenge the action either by appeal to the Council, as already established, or by appeal to the Assistant Secretary of Labor in the context of an unfair labor practice proceeding. *Id.* at 1324–1325. This recommendation was effectuated by Executive Order No. 11838 (Feb. 6, 1975), *reprinted in* Legislative History at 1336–1341.[10]

The 1975 amendments thus achieved the exact result urged by appellees today. What appellees ignore, however, is the fact that Congress had this model before it at the time the FLMRA was drafted, debated, and passed, yet did not choose to incorporate those provisions into the new statute. Instead, Congress, while retaining the compelling need standard, crafted the expedited negotiability appeal to resolve such questions.

Our interpretation of Congress' actions as a rejection of the old Executive Order provisions is buttressed by the fact that after passage of the Act, the President specifically amended Executive Order No. 11491 to delete the cited 1975 changes. Executive Order 12107 (Dec. 28, 1978), 3 C.F.R. 264 (1979).[11] This Order took effect

---

10. *See* specifically paragraph 4 (amending section 6(a) of Executive Order 11491), Legislative History at 1336, and paragraph 13 (amending section 11 of Executive Order 11491 and adding section 11(d) to permit negotiability determinations in the course of ULP proceedings), *id.* at 1338–1339.

11. Executive Order No. 12107 totally rewrote section 6(a) of the old Order to provide for the duties of the General Counsel; there is no provision similar to the old 6(a). 3 C.F.R. at 272 (1979). Section 11(d) of the old Order was revoked. *Id.* at 273.

twelve days before the new FLMRA, and was signed by President Carter to implement Reorganization Plan No. 2 of 1978, 3 C.F.R. 323 (1979), whereby the FLRA was established and the way was paved for transition to the new statute. 3 C.F.R. at 264 (1979). Congress had specified in 5 U.S.C. § 7135 that procedures under Executive Order 11491, as amended, would remain in force "until revised or revoked by the President, or unless superseded by specific provisions of this chapter ..." Thus the Executive branch, in light of the new legislation, abolished the old procedure, now suggested by appellees as controlling, to make way for the process established by 5 U.S.C. § 7117.

### IV.

█ A court's task in interpreting particular sections of statutes is to give them "'the most harmonious, comprehensive meaning possible' in light of the legislative policy and purpose," *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. 609, 631–632, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207 (1973), *quoting Clark v. Uebersee Finanz-Korp.,* 332 U.S. 480, 488, 68 S.Ct. 174, 177, 92 L.Ed. 88 (1947). The overall statutory scheme of the Federal Labor Relations Act strikes a balance between two important values: the rights of public employees to bargain collectively over conditions affecting their employment; and the unique role of the public employer as the instrument of democratic will, with the need to promote the public interest through actions (including regulations) reflecting the agency's mission and purpose. 5 U.S.C. § 7101; Legislative History at 932–933. We think the compelling need determination in § 7117(b) is, along with the reservation of management rights in § 7106,[12] one of those instances in the Act where agency action in the public interest received explicit Congressional protection.

The care which Congress gave this legislation is attested to by over 1,500 pages of legislative history. It is significant that Congress chose to provide *separate* avenues of negotiability appeals and unfair labor practice proceedings to resolve different kinds of questions. There are numerous distinctions between the two processes. A negotiability appeal is presented directly to the Authority, whereas an unfair labor practice hearing is heard first by an administrative law judge. *Compare* 5 C.F.R. § 2424 *with* § 2423.14. Negotiability appeals are expedited procedures, whereas ULP proceedings are not. Hearings on negotiability appeals are discretionary with the Authority, 5 U.S.C. § 7117(b)(3), and usually are not held, *see Defense Logistics Agency v. FLRA,* 754 F.2d at 1011, n. 13, whereas they are part of the formal process in an unfair labor practice proceeding, 5 U.S.C. § 7118(a)(6). The General Counsel is not a party to any hearing held pursuant to a negotiability appeal, 5 U.S.C. § 7117(b)(3). In a ULP proceeding, the General Counsel investigates the charge, issues and serves the complaint, and may provide for informal methods of resolution prior to the complaint, 5 U.S.C. § 7118(a)(1), (5). The agency issuing the regulation is a necessary party to a negotiability hearing, 5 U.S.C. § 7117(b)(4), but not to an unfair labor practice proceeding. In addition, a finding of no compelling need in a negotiability appeal has only the prospective effect of requiring the agency—or the local employer—to negotiate over the subject matter with the particular bargaining representative. A finding of an unfair labor practice could result in retroactive sanctions. 5 U.S.C. § 7118(a)(7)(C).

Some reason must be assigned Congress' decision to delineate these two very different proceedings, for all parts of a statute are to be given effect, *Administrator, Federal Aviation Administration v. Rob-*

---

**12.** 5 U.S.C. § 7106 lists specific areas of agency authority, including the agency's right to determine its own "mission, budget, organization, number of employees, and internal security practices," as well as hiring, layoff, disciplinary, and work assignment powers. Such rights are not negotiable, although the procedures by which those rights are implemented may be negotiated, and the union may bargain over arrangements for employees who are adversely affected by the exercise of management rights.

*ertson,* 422 U.S. 255, 261, 95 S.Ct. 2140, 2145, 45 L.Ed.2d 164 (1975); *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. at 633, 93 S.Ct. at 2485, and we may not assume Congress to have done a "useless, ineffective, or absurd thing," *Consumers Union of United States, Inc. v. Sawhill,* 512 F.2d 1112, 1118 (Temporary Emergency Ct. of Appeals), *aff'd en banc,* 525 F.2d 1068 (Temporary Emergency Ct. of Appeals 1975); *see also United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). That reason, as the Army argues in its brief, is to give a governmental agency the "flexibility to issue and revise regulations which the agency deems are essential to accomplish its executive function," Brief for Petitioners/Cross-Respondents at p. 19, while protecting the agency from the risk of thereby incurring the sanctions of an unfair labor practice proceeding. *Id.* at 20, 21. At the same time, the union is protected by the expedited procedure of § 7117(b) from any agency attempt to use its regulatory power as a means of removing an issue from the bargaining table and by the fact that only regulations which meet the strict standard of compelling need are considered non-negotiable. *See* 5 C.F.R. § 2424.11.

Thus, an examination of the history, policies, and, above all, the language of the Federal Labor-Management Relations Act persuades us that Congress meant the § 7117(b) negotiability appeal to be the sole means of determining a compelling need question under the statute. To hold otherwise would upset Congress' attempt to preserve in careful balance the interests of federal employees in negotiating their working conditions, of agencies in the exercise of their regulatory powers, and of the country in the orderly and efficient administration of government.

Consequently, we reverse the judgment of the Federal Labor Relations Authority and remand the case to the Authority for further proceedings consistent with this opinion.

REVERSED AND REMANDED.